IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR DICKINSON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-5022 |
| | : | |
| MILLERSVILLE UNIVERSITY OF | : | |
| PENNSYLVANIA, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                   **April 3, 2014**

Plaintiff Arthur Dickinson brings employment discrimination claims pursuant to Title VII, 42 U.S.C. § 1983, and the Pennsylvania Human Relations Act (PHRA) against his former employer, Millersville, and two Millersville employees, Roger Bruszewski and Louis P. DeSol (the Individual Defendants).  By Order of October 24, 2013, this Court granted as unopposed Millersville's motion to dismiss ADA, ADEA, § 1983, and PHRA claims and the Individual Defendants' motion to dismiss ADA, ADEA, and Title VII claims originally asserted by Dickinson.  The case then proceeded to discovery on the following claims: against Millersville, a Title VII claim for racial discrimination, and against the Individual Defendants, an equal protection claim under 42 U.S.C. § 1983 based on racial discrimination and a claim for aiding and abetting racial discrimination under the PHRA.  The Defendants have now moved for summary judgment on all three remaining claims.  For the following reasons, the motion will be denied in part and granted in part.

**BACKGROUND**

Dickinson is a 66-year-old African American male who began working for Millersville in June 1998.  As early as the summer of 2010, Defendant Roger Bruszewski, Millersville's Vice-

President of Finance and Administration, notified Dickinson that his position as the Director of Capital Construction was to be abolished due to budget constraints. As a result of an agreement with Bruszewski, Dickinson was nevertheless temporarily retained in his position, until he retired on September 30, 2011. Through his retirement plan, Dickinson purchased an annuity contract for $10,000 that would provide him $35.00 a month for the remainder of his life.

On December 2, 2011, approximately two months after Dickinson retired, Millersville advertised for a position called Assistant Vice President for Facilities (the Facilities Position). The Facilities Position involved responsibilities similar to those in positions Dickinson previously held at Millersville and at another university. Dickinson applied for the Facilities Position on December 21, 2011, but was not interviewed. Millersville maintains Dickinson was not interviewed because he was an annuitant, and pursuant to Commonwealth of Pennsylvania Management Directive 515.20 (the Management Directive), an annuitant is not eligible to be hired to a full-time position unless an emergency condition exists which has the potential to seriously impair services to the public and the annuitant is the only person available to help alleviate the situation. Even then, the rehire can only be employed for a maximum of 95 days per calendar year. At the time the Facilities Position was advertised, Defendant Louis P. DeSol was Millersville's Associate Vice President of Human Resources, and after Dickinson applied, DeSol recommended to the search committee that Dickinson not be granted an interview. Dickinson contends Millersville's reliance on the Management Directive as the reason to refuse him an interview was a pretext for racial discrimination.

## DISCUSSION

A motion for summary judgment will only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a).  When evaluating the motion, the Court must view the evidence in the light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor.  *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Where, as here, there is no direct evidence of discrimination, the "familiar *McDonnell Douglas* burden shifting analysis applies to . . . claims of discrimination under . . . Title VII." *Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797 (3d Cir.2003) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 (1973)).  To avoid summary judgment, Dickinson must first establish a prima facie case of discrimination.  *Id.*  The parties do not dispute that Dickinson met his burden in this regard, as he is a member of a protected class, was qualified for the position, was subject to an adverse employment action, and, because a white male was ultimately hired, the circumstances are sufficient to "raise an inference of discriminatory action."  *Id.*  Dickinson having made out a prima facie case, the burden shifts to Millersville to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  Millersville has carried this burden by putting forth the Management Directive as the reason it could not hire Dickinson (making it a futile exercise to grant him an interview).  *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (describing the employer's burden as "relatively light" and requiring only the articulation of a legitimate reason for the unfavorable employment decision).

Because Millersville has offered a legitimate, non-discriminatory reason for taking the challenged employment action, to defeat the University's motion for summary judgment Dickinson must "point[] to some evidence, direct or circumstantial, from which a factfinder would reasonably *either*: (1) disbelieve the employer's articulated legitimate reasons; *or* (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413

3

(3d Cir. 1999) (emphasis added). There is no evidence that an invidious discriminatory reason motivated the decision not to interview Dickinson; thus, the central question is whether Dickinson has put forth evidence sufficient to "support an inference that the employer did not act for its stated reasons." *Sempier v. Johnson & Higgins,* 45 F.3d 724, 731 (3d Cir. 1995). Dickinson can meet this standard by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Jones*, 198 F.3d at 413.

This Court concludes a factfinder could reasonably disbelieve Millersville's articulated reason for refusing to grant Dickinson an interview for several reasons. First, the timing of the events surrounding the creation and advertisement of the Facilities Position casts doubt on Millersville's proffered reason. Bruszewski informed Dickinson first in 2010 and again in June 2011 that his position was going to be abolished. Though the Facilities Position had been planned for a long time (Bruszewski testified he planned to create it as early as 2007), Millersville waited to advertise the position until shortly after Dickinson retired and became an annuitant. Had Millersville advertised the opening mere months earlier, Dickinson would not have been an annuitant and would therefore have been a viable candidate (even under Millersville's reading of the Management Directive's requirements).

Second, on its face, the Management Directive is not actually a bar to hiring Dickinson. For the purposes of the Management Directive, an annuitant is defined as someone who collects a monthly annuity from one of three approved retirement plans of the Pennsylvania State System of Higher Education (PASSHE). *See* Pl's Br. in Opp'n to Defs.' Mot. for Summ. J. Ex. 2 (PASSHE Information for Hiring an Annuitant). The Directive imposes a number of restrictions

and criteria regarding the circumstances under which an annuitant can maintain state employment while still collecting annuity payments. The failure to meet these criteria, however, does not result in termination, but instead requires that any payable annuity shall cease. *See id.* Ex. 3 (Management Directive 515.20(2)(f)). The Management Directive is also explicitly based on a Pennsylvania statute that, like the Management Directive itself, does not serve as a bar to employment, but only prohibits the continued receipt of annuity payments while the annuitant is fully employed by the Commonwealth. *See* 71 Pa. Cons. Stat. § 5706 ("If the annuitant returns to State service . . . any annuity payable to him under this part shall cease effective upon the date of his return to State service."). DeSol was familiar with the same instructions appearing in the record as to how to interpret and apply the Management Directive, DeSol Dep. 42, and as explained above, the instructions, the Directive itself, and the statute on which the Directive is based, make no mention of restrictions on employment.

Even if the Management Directive were a bar to employment, had Dickinson been given the opportunity to interview, he could have elected to forfeit his annuity, thereby eliminating any issue as to whether he would be eligible for employment as an annuitant. DeSol appears to have understood this point, as he stated in his deposition that "if you're not collecting an annuity amount at the time we're assessing whether you're an annuitant, then we would not consider you to be an annuitant." DeSol Dep. 44. Dickinson received $35 a month from the annuity, and the Facilities Position paid a salary of $100,000 per year, giving him a clear incentive to forfeit the annuity. Nevertheless, Dickinson was never informed that he may have had an option to forego his annuity if he wanted to be seriously considered as a candidate for the Facilities Position.

Finally, prior to his retirement and the advertisement of the Facilities Position, Dickinson asked Bruszewski for the opportunity to serve in the Facilities Position on an interim basis, but

Bruszewski denied the request, telling Dickinson that he would not have been able to handle the demands of the job.  Bruszewski Dep. 15-16.  Although Bruszewski claims to have had nothing to do with the decision not to grant Dickinson an interview, his opinion regarding Dickinson's capabilities *could* have influenced the decision not to offer Dickinson an interview—whether or not Bruszewski participated directly in the decision.  The basis upon which Bruszewski refused to employ Dickinson in the interim position cannot, however, be independently considered as one of Millersville's legitimate, non-discriminatory reasons for taking the adverse employment action, because Millersville proffered the Management Directive as the sole reason it refused to grant an interview and the decision regarding the interim position is not the challenged employment action at issue in this case.  Nevertheless, evidence of Bruszewski's prior refusal is still relevant because it involved the same position subsequently advertised by Millersville and it suggests Millersville could have had an alternative, undisclosed reason (even if legitimate) for refusing to interview Dickinson.  As the Third Circuit has explained, "[i]f the employer fails to come forth with the true and credible explanation and instead keeps a hidden agenda, it does so at its own peril.  Under those circumstances, there is no policy to be served by refusing to permit the jury to infer that the real motivation is the one that the plaintiff has charged."  *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1069 (3d Cir. 1996).

      Considered in the aggregate, these facts are enough for a reasonable factfinder to conclude that Millersville's stated reason for not granting Dickinson an interview was not its true reason, and, although it is a close call, the Court finds there is evidence sufficient to infer that Millersville's reliance on the Management Directive was not simply wrong, it was "so plainly wrong that it cannot have been the employer's real reason."  *Jones*, 198 F.3d at 413.  While it is possible DeSol may have truly believed the Management Directive did in fact bar Millersville

from re-hiring Dickinson, under the circumstances set forth above, DeSol's mindset and his credibility involve factual issues for the jury to decide. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 430 (3d Cir. 2013) ("[T]he plaintiff may point to evidence in the record that would cause a reasonable juror to disbelieve the employer's articulated legitimate non-discriminatory reason, thereby creating a genuine dispute of material fact as to the credibility of that reason."); *see also Sheridan*, 100 F.3d at 1072 ("[O]nce the court is satisfied that the evidence meets this threshold requirement, it may not pretermit the jury's ability to draw inferences from the testimony, including the inference of intentional discrimination drawn from an unbelievable reason proffered by the employer.").

The meager record in this case does raise the question as to whether any evidence of discriminatory animus (aside from the prima facie case) must be presented to survive summary judgment. Based on Third Circuit precedent, the answer is no. *See Burton*, 707 F.3d at 430 ("To the extent the District Court's pretext analysis suggested that Burton was required to show evidence of discriminatory animus to demonstrate pretext, that suggestion is unsupported by our precedent."). As this Court emphasized above, the two methods by which a plaintiff may defeat summary judgment in an employment discrimination case are disjunctive; thus, "if a plaintiff has come forward with sufficient evidence to allow a finder of fact to discredit the employer's proffered justification, she need not present additional evidence of discrimination beyond her prima facie case to survive summary judgment." *Id.* at 427. Accordingly, this Court concludes Millersville's motion for summary judgment must be denied.

Based on the same meager record discussed above, this Court must also consider whether the Individual Defendants should be forced to stand trial and face individual liability for allegedly discriminating against Dickinson on the basis of race in violation of the Equal

7

Protection Clause and for aiding and abetting Millersville's racial discrimination under the PHRA. "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citing *Batson v. Kentucky*, 476 U.S. 79, 93 (1986)). This requires demonstrating that a plaintiff received "different treatment from that received by other individuals similarly situated." *Id.* Because Dickinson presented no evidence that he was treated differently from any other similarly situated individuals, he has failed to carry his burden as to the § 1983 claim against the Individual Defendants. *See, e.g.*, *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (affirming district court's grant of summary judgment dismissing an equal protection claim when plaintiff provided no evidence that she was treated differently from other similarly situated individuals).[1]

Dickinson has also asserted a PHRA claim against the Individual Defendants. Unlike Title VII, which does not provide for individual liability, the PHRA permits such liability in certain circumstances. *See* 43 Pa. Cons. Stat. § 955(e) (stating it is an unlawful discriminatory practice "[f]or any person, employer, employment agency, labor organization *or employee*, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." (emphasis added)). Claims under § 955(e) are based on an aiding and abetting theory of liability. *See Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996) (holding individuals can be held liable for claims for aiding and abetting brought under the PHRA). For liability to be imposed on an aiding and abetting theory, however, there must be a cognizable

---

[1] Even if there were a violation of a constitutional right, this Court concludes qualified immunity would also apply to bar Dickinson's § 1983 claim. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001) (noting "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted"). In the event of an appeal, the Court will expand on the qualified immunity analysis.

predicate offense, *i.e.*, a violation by Millersville of the PHRA's primary anti-discrimination provision directed toward employers.  *See, e.g.*, *Burgess-Walls v. Brown*, No. 11-275, 2011 WL 3702458, at *6 (E.D. Pa. Aug. 22, 2011) ("Individual defendants cannot violate PHRA section 955(e) when there is no corresponding section 955(a) violation by an employer to aid and abet") (quoting *Kaniuka v. Good Shepherd Home*, No. 05-02917, 2006 WL 2380387, at *10 (E.D. Pa. Aug. 15, 2006)).  Millersville previously moved to dismiss the PHRA-based discrimination claim asserted against it, and when Dickinson did not oppose the motion, this Court granted it.  The aiding and abetting claim will therefore be dismissed because there is no statutory offense against Millersville under the PHRA that DeSol and Bruszewski are alleged to have aided and abetted.

    An appropriate order follows.

    BY THE COURT:

    /s/ Juan R. Sánchez
    Juan R. Sánchez, J.